```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS
```

DENISE A. ZIEGLER,

        Plaintiff,

vs.                            Case No. 15-1097-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.   General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On August 30, 2013, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 32-44). Plaintiff alleges that she had been disabled since January 23, 2008 (R. at 32). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2012 (R. at

Case 6:15-cv-01097-SAC   Document 21   Filed 03/23/16   Page 5 of 13

34). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 34). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 34). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 34). After determining plaintiff's RFC (R. at 36-37), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 43). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 43-44). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 44).

**III. Are the ALJ's RFC findings supported by substantial evidence in light of the medical opinion provided by Dr. Weidensaul on September 2, 2014?**

In his decision, the ALJ referenced the medical records of Dr. Weidensaul, stating that Dr. Weidensaul noted some symptoms of fibromyalgia and osteoarthritis, but did not offer a definitive diagnosis (R. at 38). Dr. Weidensaul's consultative report, dated May 8, 2012, stated that he thought plaintiff had some symptoms of fibromyalgia and some symptoms of osteoarthritis (R. at 634-636).

5

After the ALJ decision, plaintiff submitted to the Appeals Council a statement from Dr. Weidensaul, dated September 2, 2014. It states, in relevant part:

> …I evaluated Ms. Ziegler on May 8, 2012…She did have symptoms of fibromyalgia and osteoarthritis. Although I referred to my clinical findings only generally as symptoms of fibromyalgia, it is my standard practice for such a rheumatological evaluation, especially when fibromyalgia is suspected, to include assessment of the fibromyalgia tender points. I ordered several blood tests to rule out Lupus and other autoimmune diseases. It was because such disorders had not been ruled out that the diagnosis of fibromyalgia was not definitive in my May 8, 2012 treatment note. The lab results, reflected in my May 14, 2012 note to Ms. Ziegler, did rule out other disorders. I prescribed…at that time for her fibromyalgia because ruling out the other disorders in combination with my May 8, 2012 exam confirmed the diagnosis of fibromyalgia. While my notes may not be entirely clear to the outside observer, this was my diagnosis.
>
>     Her diagnosis and clinical presentation support limitations in her ability to function. The fibromyalgia caused fatigue and pain. Ms. Ziegler was in pain most of the time, and she would also have especially bad days when she would be very dysfunctional and have to rest most of the time. The fibromyalgia causes limited endurance because of the pain and fatigue. She also had painful motion in her hips caused by her osteoarthritis in the hips. The osteoarthritis in her hips and shoulders further supports difficulty with sitting, standing, walking, lifting, pushing, and pulling. Her pain, fatigue, and consequent lack of endurance made her unable to attend an eight hour per day schedule of any activity including any combination of

6

>    sitting, standing, or walking. Her bad days
>    mentioned above would often make her absent
>    from any such schedule. She could not be a
>    reliable employee.
>
>    …Ms. Ziegler's complaints and symptoms were
>    consistent with her diagnosis and my
>    observations. It is my opinion that she was
>    a credible patient and was not putting it on
>    or exaggerating.
>
>    The opinions expressed here are based
>    both on my treatment notes and my specific
>    recollections and observations…

(R. at 668-669).

The Appeals Council added Exhibit 28 and Exhibit 29 (the Sept. 2, 2014 statement from Dr. Weidensaul) to the record (R. at 6) and considered this evidence in deciding whether to review the ALJ decision.[1] The Appeals Council found that the information provided did not provide a basis for changing the ALJ's decision (R. at 1-2).[2] The court finds that Dr. Weidensaul's statement of September 2, 2014, on its face, discusses and clarifies his treatment notes in May 2012.

---

[1] The Appeals Council must consider additional evidence offered on administrative review-after which it becomes part of the court's record on judicial review-if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision. If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in judicial review. Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011).

[2] The Appeals Council, after stating that they considered Exhibit 28F and 29F, then stated that "[w]e also looked at the medical records dated November 26, 2013 through January 29, 2014 from El Dorado Internal Medicine, Rizwan Hassan M.D., and Arthritis and Rheumatology Clinics of Kansas," but found that these records were about a later time, and therefore did not affect the ALJ's decision concerning whether plaintiff was disabled on or before December 31, 2012. The Appeals Council did not state that Exhibit 29, Dr. Weidensaul's statement, dated Sept. 2, 2014, was about a time after the December 31, 2012 date in which plaintiff was last insured (Doc. 1-2). When the Appeals Council accepts additional evidence, that is an implicit determination that it is qualifying new evidence, i.e., that it is new, material and related to the period on or before the date of the ALJ's decision. Krauser, 638 F.3d at 1328.

The court must consider the qualifying new evidence submitted to the Appeals Council when evaluating the Commissioner's denial of benefits under the substantial evidence standard. Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003); O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994). The court will examine both the ALJ's decision and the additional findings of the Appeals Council.  This is not to dispute that the ALJ's decision is the Commissioner's final decision, but rather to recognize that the Commissioner's "final decision" includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence. O'Dell, 44 F.3d at 859.  The district court's very task is to determine whether the qualifying new evidence upsets the ALJ's disability determination, Martinez v. Astrue, 389 Fed. Appx. 866, 869 (10th Cir. Aug. 3, 2010), or whether the new evidence submitted to the Appeals Council provides a basis for changing the ALJ's decision.  Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).

In the case of Wilson v. Colvin, Case No. 12-1365-JWL, 2014 WL 1689293 (D. Kan. April 29, 2014), Ms. Martin, a psychiatric nurse-practitioner, had provided a medical source statement, but the ALJ accorded it little weight.  Instead, the ALJ gave great weight to the opinions of state agency consultants.  2014 WL 1689293 at *4.  Ms. Martin then submitted an opinion letter

8

explaining and clarifying her earlier statement; this letter was first submitted to the Appeals Council.  Plaintiff also submitted to the Appeals Council a letter from Mr. Bremyer, plaintiff's treating therapist, which affirmed the opinions of Ms. Martin.  2014 WL 1689293 at *5-6.  The court held that this additional evidence, including Ms. Martin's explanation, if accepted, provides material information which would significantly alter the ALJ's decision, for it tends to negate much of the ALJ's basis for discounting the opinions of Ms. Martin and Dr. Schwartz.  The court noted that if those opinions are not properly discounted, disability is the only remaining option.  The court indicated that it could not weigh this evidence in the first instance, and remanded the case in order for the Commissioner to consider the letters provided to the Appeals Council and to determine what weight should be accorded to the medical opinions in light of all the record evidence.  2014 WL 1689293 at *6.  See Gatewood v. Colvin, Case No. 13-1339-SAC (D. Kan. Sept. 30, 2014; Doc. 26 at 6-12)(a sentence six remand case; the court found that a subsequent statement from Dr. Davis provided material information which, if accepted, would significantly alter the ALJ's decision, for it tended to negate much of the ALJ's basis for discounting the earlier opinions expressed by Dr. Davis); Grube v. Colvin, Case No. 14-1191-SAC (D. Kan. Aug. 19. 2015; Doc. 19 at 9-10)(report from

Dr. Stevenson, if accepted, would significantly alter the ALJ decision because it indicates that plaintiff would need to elevate her right leg to the level of her heart and the VE testified that elevation above the waist would preclude work; court remanded case for Commissioner to consider report from Dr. Stevenson).

As was the case in <u>Wilson</u>, <u>Gatewood</u> and <u>Grube</u>, the report from Dr. Weidensaul, if accepted, provides material information which could significantly alter the ALJ's decision.  The ALJ stated in his decision that Dr. Weidensaul had only noted some symptoms of fibromyalgia and osteoarthritis, but had not offered a definitive diagnosis of fibromyalgia or osteoarthritis.  The statement from Dr. Weidensaul clearly indicates that he diagnosed fibromyalgia in May 2012 and opined that her fibromyalgia and osteoarthritis would preclude her from working an eight hour day including any combination of sitting, standing, or walking.  In making his RFC findings, the ALJ gave substantial weight to the opinions of Dr. Parsons set out in a physical RFC assessment (R. at 41).  However, Dr. Parsons, who never examined the plaintiff and only reviewed the medical records, did not have the additional information from Dr. Weidensaul before him (R. at 97-99).

The court finds that the Appeals Council clearly erred in stating that the statement from Dr. Weidensaul did not provide a

basis for changing the ALJ's decision.  It is not within this court's jurisdiction to weigh the evidence in the first instance and decide whether or not plaintiff is disabled.  Therefore, remand is necessary for the Commissioner to consider the report from Dr. Weidensaul and to determine the appropriate weight to be accorded to his opinions and all the medical opinions in the record in light of all the record evidence.

**IV.  Other issues raised by plaintiff**

Plaintiff also alleges a number of other errors, including the consideration of plaintiff's migraines, the weight accorded to the opinions of Dr. McCoy and Dr. Steffan, plaintiff's credibility, and the statements of a 3rd party.  These issues will not be addressed in detail because they may be affected by the ALJ's resolution of the case on remand after the ALJ considers the opinions of Dr. Weidensaul.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).  The court would note, that in making RFC findings, the ALJ should consider the impact of the severe impairment of migraine headaches.

In regards to the opinions of Dr. McCoy and Dr. Steffan, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ

11

must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007). However, plaintiff has argued that despite giving "substantial" weight to the opinions of Dr. Steffan, some of his opinions are not reflected in the RFC findings. On remand, the ALJ should address what weight to accord to all of the opinions of Dr. Steffan when making his RFC findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 23rd day of March 2016, Topeka, Kansas.

s/SAM A. CROW
Sam A. Crow, U.S. District Senior Judge